IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICKEY KRAUS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

No. C 06-04667 CRB

**MEMORANDUM AND ORDER**

This is an employment discrimination action. Plaintiff is African-American, female and a lesbian. She also claims she is disabled by dyslexia, emotional distress and brain damage from lead poisoning. Defendant moves for summary judgment on the ground that many of plaintiff's claims are untimely and/or are unexhausted. It also contends that plaintiff cannot make a prima facie showing of employment discrimination or retaliation. After carefully considering the papers and evidence filed by the parties, and having had the benefit of oral argument, defendant's motion is GRANTED.

## BACKGROUND

Plaintiff has worked with the National Park Service since 1983 and with The Presidio Trust since 1998. She is currently a maintenance inspector and held this position at all times relevant to her complaint.

//

### A.     *The First EEO Complaint*

#### *1.     Plaintiff's Declaration*

The Presidio Trust subsidized a vanpool program. The vanpool traveled from Vacaville to San Francisco, passing through Suisun City, where plaintiff resides. All employees utilizing the vanpool were male. In December 2001 plaintiff asked if there was space available, and she was told there was not. Another member of the vanpool told her there was space available. Nonetheless, over the next several months plaintiff attempted to join the vanpool without success.

Plaintiff lodged an official complaint with her supervisor, Stephen Potts. Potts sent plaintiff to EEO Officer, Deborah Zipp. When Zipp did not get back to plaintiff for several weeks, plaintiff contacted James Lechleitner, Deputy Director of Human Resources and the Director of EEO. Lechleitner referred plaintiff to Carolyn Provost, an EEO counselor. Provost told plaintiff that there was still time to file a formal complaint, but that she must do so through Zipp.

When plaintiff contacted Zipp, Zipp was upset that plaintiff had gone "over her head" to Zipp's supervisor. Zipp persuaded plaintiff to resolve the situation informally, rather than through a formal complaint. Also during this time plaintiff contacted The Presidio Trust General Counsel, Karen Cook. Shortly thereafter the vanpool was dismantled.

In October 2002, plaintiff's friend, an African-American male, interviewed with Mark Feickert, the Abatement Supervisor. Plaintiff learned that during the interview Feickert told the friend that he was not suited for the job and that Mexicans were better laborers. Plaintiff notified her supervisor, Potts, of Feickert's remark and also gave Potts a letter regarding the incident.

In February 2003, plaintiff received her appraisal. She was "called into" Feickert's office where Feickert spoke to her about her communication skills. She received a rating of "3" on her appraisal for communication.

On February 24, 2003, Zipp called plaintiff into her office. Zipp told plaintiff that an

employee, Rosa Medina, had made a sexual harassment complaint against plaintiff and that plaintiff needed to be "put in her place."

Plaintiff later initiated a complaint with EEO Counselor Carolyn Provost. Provost began the counseling session, "but was abruptly removed by management." As a result, plaintiff initiated a reprisal complaint.

### *2.    The Administrative Process*

Plaintiff made her initial contact with an EEO counselor alleging discrimination on March 21, 2003. On March 26, 2003, the counselor interviewed plaintiff. On March 31, 2003, Zipp assigned a contract EEO counselor to conduct informal EEO counseling of plaintiff's pre-complaint.

On May 19, 2003, plaintiff filed a formal complaint of discrimination. As plaintiff has not submitted any evidence in support of her opposition to summary judgment other than her own declaration, the only documentary evidence in the record is that submitted by the Presidio Trust. Those documents, which involve letters from The Presidio Trust to plaintiff, identify plaintiff's discrimination complaints as follows:

> Based on her race (African-American), sex (Female), sexual preference (Female), disabilities (Emotional distress and dyslexia), and reprisal (EEO complaint filed on March 21, 2003 and protected activity regarding the complainant's request for corrective actions regarding the discriminatory administration of vanpools) the complainant alleges that the Presidio Trust discriminated against her when:
>
> 1.   On February 11, 2003, Stephen Potts, Director of Operations assigned her a rating of "3" instead of "4" for the communication element of her performance appraisal.
>
> 2.   On February 24, 2003, Deborah Zipp, the EEO Officer, falsely accused the complainant of sexual harassment and in retaliation for contacting Karen Cook, General Counsel of the Presidio Trust.
>
> 3.   On March 31, 2003, Deborah Zipp, the EEO Officer retaliated against the complainant by assigning a contract EEO Counselor, instead of Carolyn Provost, the Presidio Trust EEO Counselor, to conduct informal EEO Counseling of her pre-complaint.

Declaration of William G. Coffman ("Coffman Decl.") Exh. A. The Presidio Trust conducted an investigation and issued a Report of Investigation on January 12, 2004. Id. Exh. D.

Plaintiff chose to have her case heard by an administrative judge prior to The Presidio Trust issuing a Final Agency Decision. The administrative judge granted The Presidio Trust's motion for summary judgment without a hearing after plaintiff failed to file a response, even after having been given an extension to do so. Id. Exh. E. The Presidio Trust issued its Final Agency Action, adopting the administrative judge's ruling, on July 14, 2004. Plaintiff appealed to the EEOC, Office of Federal Operations. The EEOC affirmed the decision on April 27, 2006. Plaintiff received the EEOC's decision on May 2, 2006.

### B.     *The Second EEO Complaint*

#### 1.     *Plaintiff's Declaration*

During a meeting on February 4, 2004, Tom Blein, plaintiff's then supervisor, stated that in his absence plaintiff would not be allowed to work as supervisor in his place. When she had first started in her position, Blein had said that plaintiff and two other employees would rotate alphabetically in filling the supervisor's job responsibilities.

In March 2004, Blein relocated all of plaintiff's co-workers to another building except plaintiff; in particular, Blein moved one co-worker, with whom plaintiff shared an office, but not plaintiff.

On June 2, 2004, Blein criticized plaintiff for submitting too many work orders.

Later, Blean told plaintiff to find a desk for herself. She moved herself into the building where her co-workers were located.

In August 2004, Blean told plaintiff she was responsible for bringing down the morale of the department. Plaintiff's subsequent appraisal, in January 2005, was lower than her previous appraisal, from an overall 4 to an overall 3.

Plaintiff was off work on a workers' compensation back injury from August 23, 2004 through January 11, 2005.

#### 2.     *The Administrative Process*

On February 24, 2005, plaintiff initiated EEO counseling. On May 31, 2005, she filed a formal complaint of discrimination. After a series of letters between Zipp and plaintiff,

4

Zipp sent plaintiff a notice of Formal EEO Complaint of Discrimination that identified plaintiff's claims as follows:

> In your statement dated February 16, 2005, you alleged that you have been subjected to unlawful discrimination by the agency based on your race (African-American), sex (female), sexual preference (female), disabilities (emotional distress, anxiety, depression, brain damage from lead poisoning, sciatic nerve) and reprisal (prior EEO activity). Specifically, during counseling you alleged the following incidents as claims of discrimination against the Presidio Trust.
>
> (1) In April 2001, you were dissatisfied with Deborah Zipp's handling of your complaints of sexual harassment.
>
> (2) From December 2001 until December 2002, an all male group of Presidio Trust employees denied you membership in their vanpool.
>
> (3) On December 17, 2002, you complained about Mark Feickert's unprofessional behavior, discrimination, and disparate treatment of an applicant you had referred to him for a job interview.
>
> (4) On February 11, 2003, Stephen Potts, Director of Operations assigned you a rating of "3" instead of "4" for the communication element of your 2002 performance appraisal.
>
> (5) On February 24, 2003, Deborah Zipp, the EEO Officer, falsely accused you of sexual harassment.
>
> (6) In March 2003, Deborah Zipp retaliated against you by denying you the EEO Counselor of your choice.
>
> (7) On April 30, 2003, Rosa Medina, a co-worker, made rude, misleading and insensitive comments to you.
>
> (8) In mid-February 2004, Tom Blean, relocated your male co-worker's workspace from building 1750 to building 1752, but did not relocate your workspace.
>
> (9) On February 4, 2004, Tom Blean, your supervisor, denied you the opportunity to act as the Maintenance Supervisor in his absence.
>
> (10) On June 2, 2004, Tom Blean criticized you for submitting too many work orders for trash.
>
> (11) During your mid-year review on August 19, 2004, Tom Blean criticized you for bringing down the morale of the department.
>
> (12) On August 23, 2004, and January 20, 2005, your supervisor, Tom Blean and your manager, Steve Bueno did not conduct responsibilities as required by the agency's performance appraisal system.
>
> (13) On January 20, 2005, your supervisor, Tom Blean rated Element #3 of your 2004 performance appraisal, Quality of Work as "2" (less than fully successful), thereby preventing you from receiving a 3% comparability pay increase in February 2005.

(14) On or about September 2004, a Trust supervisor, Mark Feickert, falsely accused you of sexual harassment.

Coffman Decl. Exh. J.  Plaintiff chose not to have an administrative judge resolve these complaints.

### C. *The District Court Complaint*

Plaintiff filed this action on July 31, 2006.  She alleges discrimination on the basis of race, sex, disability, sexual orientation, and hostile work environment.  Defendant now moves for summary judgment on all of plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (usually the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied.  If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  Nissan Fire & Marine Ins. Co., 210 F.3d at 1102.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is entitled to rely on the

nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. See id.

## DISCUSSION

### A. *May 2003 Administrative Complaint Claims*

#### 1. *Timeliness*

Defendant first argues that plaintiff's claims arising from the May 2003 complaint are time barred. Plaintiff had 90 days from the receipt of The Presidio Trust's final decision, dated April 27, 2006, to file her complaint. 42 U.S.C. § 2000e-16(c). Plaintiff attests in her signed declaration that she received the decision on May 2, 2006; her complaint is therefore timely.

#### 2. *Adverse Action*

To satisfy her prima facie burden on her employment discrimination and retaliation claims, plaintiff must prove, among other things, that she suffered an "adverse employment action." See Aragon v. Republic Silver State Disposal Co., 292 F.3d 654, 658 (9th Cir. 2002) (discrimination); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002) (retaliation).

Defendant contends that none of the challenged actions set forth in the May 2003 administrative complaint--the appraisal, sexual harassment talk, and change in the assigned EEO Counselor--constitutes an adverse employment action as a matter of law.

> Only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation. Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion. By contrast, we have held that declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions.

Brooks v. City of San Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000); see also Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) ("an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity"). The Court will therefore consider whether a reasonable trier of fact could find

that any of the three challenged actions constitutes an adverse employment action sufficient to satisfy plaintiff's prima facie burden.

### a. The change in EEO counselor

No reasonable trier of fact could find that the assignment of a contract EEO counselor to plaintiff's complaint was an adverse employment action. First, EEO regulations provide that the EEO *shall dismiss* any claim alleging dissatisfaction with the EEO process. 29 C.F.R. § 1614.107(a)(8) (emphasis added). This regulation means that the EEOC does not deem how an employee is treated as part of the EEO process to be an adverse employment action.

In any event, plaintiff offers no evidence that an objective employee would find the assignment of a contract EEO counselor to be objectively disadvantageous or that it would in any way deter a reasonable employee from complaining about discrimination. Judgment must be granted on this claim.

### b. The sexual harassment allegation

Plaintiff alleges that she was falsely accused of sexually harassing another employee. She does not contend, however, that she was in any way disciplined; that is, that anything happened other than that the accusation was levied against plaintiff. See Brooks, 229 F.3d at 929 (noting that badmouthing an employee outside of the job reference context is not an adverse employment action). Plaintiff does not cite any case that suggests that an accusation in a single meeting, without more, is sufficient to constitute an adverse employment action, especially where, as here, the accusation was made in a private meeting between plaintiff and EEO Officer Zipp; indeed, plaintiff does not respond to defendant's argument that this "talking to" is not an adverse employment action as a matter of law.

### c. The appraisal

Defendant gave plaintiff her written appraisal for her year 2002 performance in February 2003. There were five possible ratings applied to each element: 5 = outstanding; 4; 3 = fully successful; 2; and 1 = unsuccessful. Plaintiff was evaluated as a "4" in four of the categories (productivity, job knowledge and skill, quality of work, judgement), and as a "3"

8

in two of the categories (safety and teamwork/communication/customer service). Coffman Decl. Exh. B. Plaintiff challenges only the "3" rating for teamwork/communication.

The Ninth Circuit has held that an "undeserved negative performance rating can constitute an adverse employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). Nonetheless, on the record before the Court, no reasonable trier of fact could find that the "3" rating in the communication category is an adverse employment action because the "3"--fully successful--had no tangible effect. The performance evaluation worksheet shows that a "summary rating" is computed from the scores in the various categories. Plaintiff's summary rating was a "4" and still would have been a "4" even if she had received a "4" in teamwork/communication. Coffman Decl. Exh. K. The "fully successful" rating in the communication category thus was not reasonably likely to deter an employee from engaging in protected activity; it simply had no negative consequence. See Alonzo v. Principi, 2006 WL 1582358 * 6 (E.D. Cal. June 5, 2006) (holding that the lowering of the plaintiff's performance rating was not an adverse employment action as a matter of law because plaintiff failed to show that it "resulted in any sort of adverse personnel action").

Plaintiff does not offer any evidence that the raw score (as opposed to her summary rating) would deter a reasonable employee from complaining about discrimination; instead, she contends that she has not had the opportunity to conduct discovery on how supervisors use the raw score to determine promotions.

Federal Rule of Civil Procedure 56(f) provides that "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated" present evidence essential to oppose summary judgment, the trial court may deny the motion for summary judgment or continue the hearing to allow for needed discovery. In making a Rule 56(f) request, a party opposing summary judgment "must make clear what information is sought and how it would preclude summary judgment." Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987). The party seeking additional discovery must also explain its inability to presently provide the evidence it seeks

9

to discover; that is, it must show that it previously exercised due diligence to obtain the evidence it now seeks a continuance to obtain. Brae Trans., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1442-43 (9th Cir.1986).

Plaintiff has not met her Rule 56(f) burden. First, the Rule requires the party opposing summary judgment to submit an affidavit demonstrating the need for the additional time to gather evidence. Fed. R.Civ.P. 56(f); see also Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56(f) *must identify by affidavit* the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.") (emphasis added). Plaintiff did not submit the affidavit required by Rule 56(f).

Second, even assuming Rule 56(f) did not require an affidavit, plaintiff's memorandum in opposition does not explain why she has been unable to conduct discovery.

Third, even assuming plaintiff had met her burden of showing she has not had adequate time to conduct discovery, plaintiff has not explained why she needs discovery to offer evidence to show that the "fully successful" rating in the communications category of her appraisal is an adverse employment action. The dispositive question is whether the employer's conduct would deter a reasonable employee from engaging in protected activity. See Ray, 217 F.3d at 1243. If an employee is not aware that a "fully successful" rating in a particular category has any employment consequence, it would not deter a reasonable employee from engaging in protected activity. See Schlosser v. Potter, 2007 WL 2750288 (9th Cir. Sep. 21, 2007) (holding that employer conduct that does not have any employment consequences is not an adverse employment action).

Finally, plaintiff's memorandum in opposition does not identify what facts plaintiff seeks to discover to defeat summary judgment on this issue. United States v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1363 (9th Cir.1986) ("The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.") (citation and alteration omitted).

10

As the record is insufficient to support a finding that the "3" rating in the communications category was an adverse employment action, defendant's motion for summary judgment on this claim must be granted.

### B.  *May 31, 2005 Administrative Complaint*

Several of plaintiff's 14 "claims" in the May 2005 administrative complaint are encompassed by her May 2003 complaint and thus are discussed above. The remaining claims are discussed below.

#### *1.  Timeliness*

Federal regulations provide that federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105. In particular, the employee "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(1).

The following "claims"-- to the extent they could even be considered discriminatory acts--are time barred as it is undisputed that plaintiff did not initiate counseling until February 24, 2005:

(1) in April 2001, plaintiff was dissatisfied with Deborah Zipp's handling of her complaints of sexual harassment,

(2) from December 2001 until December 2002, an all male group of Presidio Trust employees denied plaintiff membership in their vanpool,

(3) on December 17, 2002, plaintiff complained about Mark Feickert's unprofessional behavior, discrimination, and disparate treatment of an applicant plaintiff had referred to him for a job interview,

(4) on April 30, 2003, Rosa Medina, a co-worker, made rude, misleading and insensitive comments to you,

(5) in mid-February 2004, Tom Blean, relocated plaintiff's male co-worker's workspace from building 1750 to building 1752, but did not relocate plaintiff's workspace,

(6) on February 4, 2004, Tom Blean, plaintiff's supervisor, denied plaintiff the opportunity to act as the Maintenance Supervisor in his absence,

11

>(7) on June 2, 2004, Tom Blean criticized plaintiff for submitting too many work orders for trash,
>
>(8) during plaintiff's mid-year review on August 19, 2004, Tom Blean criticized plaintiff for bringing down the morale of the department,
>
>(9) on August 23, 2004 plaintiff's supervisor, Tom Blean and plaintiff's manager, Steve Bueno did not conduct responsibilities as required by the agency's performance appraisal system, and
>
>(10) On or about September 2004, a Trust supervisor, Mark Feickert, falsely accused plaintiff of sexual harassment.

Plaintiff's failure to initiate counseling within 45 days of these allegedly discriminatory events is fatal to her discrimination claims. Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002).

Plaintiff responds that these claims are timely because "she complained to Deborah Zipp with regard to each and every one of these claims within the 45 day period, however, Ms. Zipp would discourage Plaintiff from filing or would delay processing her complaints, and would not process her complaints as Plaintiff requested." Opp. at p. 20. The only evidence plaintiff has submitted in support of her opposition, however, is her declaration. At paragraph 46 she baldly states:

>For each claim identified by Defendants regarding failure of me to exhaust my administrative remedies, I complained the same day or the following day to my supervisor, my manager, and always to the EEO Officer.

In considering defendant's motion for summary judgment, the Court must assume plaintiff's assertion is true. The question, then, is whether evidence that plaintiff "complained" to an unidentified EEO officer, without more, satisfies the requirement that she contact an EEO counselor.

"Under federal regulations promulgated by the EEOC, federal employees complaining of discrimination by a governmental agency 'must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter,' 29 C.F.R. § 1614.105(a), and they 'must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory,' 29 C.F.R. § 1614.105(a)(1)." Lyons, 307 F.3d at 1095. "This deadline constitutes an administrative requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Id. at 1095 n.5. Thus, plaintiff must initiate contact

12

with an EEO counselor to exhaust her remedies.  See Scholosser v. Potter, 2007 WL 2750288 (9th Cir. Sep. 21, 2007) (affirming dismissal of claims for failure to initiate contact with EEO Counselor within 45 days).  Plaintiff does not cite any authority that suggests that making an unspecified complaint to a supervisor or some other EEO officer is sufficient.

Plaintiff also does not offer any evidence that suggests waiver, estoppel or equitable tolling as to any of the above claims, except, perhaps, for the vanpool claim.  There is no evidence that defendant discouraged plaintiff from initiating counseling or that plaintiff was thwarted in her attempt to do so.  Plaintiff also does not contend that she was unaware of the 45 day requirement; nor could she, since she officially contacted an EEO counselor as early as February 2003.  See Leorna v. U.S. Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997) (noting that having neither actual nor constructive knowledge of 45 day time suffices to establish equitable tolling).  In sum, despite her admitted knowledge of the requirement that she initiate counseling within 45 days of the challenged incident, and her availment of the process in the past, she failed to do so here.  Accordingly, defendant's motion for summary judgment on the above claims, with the exception of the vanpool claim, must be granted.

Plaintiff's evidence as to the vanpool claim is distinguishable from her other claims.  Plaintiff attests that she initiated contact with an EEO counselor who referred plaintiff to Zipp.  Plaintiff's Decl. ¶¶ 7-10.  While there is no dispute that plaintiff did not formally initiate the required counseling, for purposes of defendant's motion the Court will assume that plaintiff exhausted her administrative remedies for the vanpool claim.

### *2.     Plaintiff waived the van pool claim*

Even if plaintiff timely initiated contact with an EEO counselor on her vanpool claim, she subsequently waived the issue.  The EEO Counselor's Report for plaintiff's 2003 contact with an EEO counselor reflects that plaintiff told the counselor that the vanpool issue had been resolved and was not part of her current complaint.  Coffman Decl. Exh. C at p. 4.  Plaintiff does not offer any evidence to contradict this evidence of her waiver; nor does she object to the admissibility of the Counselor's Report.

//

13

### *3.  January 2005 performance appraisal for year 2004*

Defendant concedes that plaintiff's challenge to her year 2004 appraisal is timely. It nonetheless moves for summary judgment on this claim on the ground that plaintiff cannot meet her prima facie showing of discrimination on any basis (race, gender, sexual orientation, disability) or a prima facie showing of retaliation.

### *a.  Discrimination*

In order to prevail in a Title VII disparate treatment case, a plaintiff must first establish a prima facie case of discrimination. In particular, a plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) she was similarly situated to others not members of the protected class who were treated more favorably. See Aragon, 292 F.3d at 658. If a plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant does so, the plaintiff must demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (internal quotation marks and citations omitted).

Defendant argues that plaintiff cannot meet her prima facie burden and, even if she had, defendant has proffered a legitimate, nondiscriminatory reason for the "2" rating on the work quality category of her year 2004 performance evaluation. Blean attests in an affidavit that he is the Maintenance Inspection Supervisor over three employees, including plaintiff. About 70 percent of his supervisory time was spent with plaintiff helping her make corrections to paperwork and get her paperwork in on time. He only rarely had these same problems with the other two employees in his unit. Her gave her the "2" on the work quality element of her performance evaluation because he has to correct her calculations 90 percent of the time. The other inspectors make similar mistakes only once a month or every other month.

Plaintiff responds that she needs additional time to conduct discovery. As the Court explained above, plaintiff has not met her Rule 56(f) burden as she has not submitted the required affidavit, let alone an affidavit that explains why she has been unable to acquire the needed discovery and identifies the specific evidence she seeks to defeat summary judgment.

Moreover, even if the Court assumes that plaintiff has satisfied her prima facie burden, she does not dispute defendant's legitimate, non-discriminatory reason for her "2" rating; namely, the quality of her work. Plaintiff does not need discovery to dispute this evidence; she has personal knowledge of whether Blean frequently had to correct her calculations. In her affidavit, however, plaintiff never disputes Blean's description of her work. As it is therefore undisputed that plaintiff's work quality had problems, defendant is entitled to summary judgment on plaintiff's claim that the "2" rating in the work quality category of her year 2004 performance evaluation was discriminatory.

### b. *Retaliation*

Plaintiff also claims that the performance evaluation was made in retaliation. A plaintiff can establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made. See id.

Plaintiff's opposition does not identify the protected activity that allegedly motivated the lower performance rating. The triggering protective activity cannot be her 2003 administrative complaint as the record does not reflect that either Blean or Bueno were involved with that earlier complaint and plaintiff did not name them in the earlier complaint; nor were they her supervisors at the time. In her opposition plaintiff states, without citation to any support, that she had complained to her supervisors and others about Blean and that Blean was aware of those complaints. Opp. at 26. Such a vague and unsupported assertion

15

is insufficient to support a finding of causation. Plaintiff has not made a prima facie showing that the performance rating was made in retaliation for plaintiff having engaged in a protected activity.

Even if plaintiff had made a prima facie showing of retaliation, as is explained above defendant has met its burden to articulate a legitimate nondiscriminatory reason for the performance evaluation. Since defendant has carried its burden, plaintiff must demonstrate that the "'assigned reason' was 'a pretext or discriminatory in its application.'" Lynn v. Regents of the Univ. of California, 656 F.2d 1337, 1341 (9th Cir. 1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Pretext may be shown either (1) directly showing that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence. Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1220 ( 9th Cir. 1998). To establish pretext, "very little" direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." Id. at 1222; Little v. Windermere Relocation, Inc., 265 F.3d 903, 915 (9th Cir. 2001). As is explained above, plaintiff offers no evidence of pretext; her declaration--the only evidence proffered by plaintiff--does not dispute Blean's explanation of plaintiff's work errors.

### *4.     Ongoing pattern of discrimination and a hostile work environment*

Plaintiff also contends that all of the unexhausted claims are part of an ongoing pattern of discrimination and therefore her claims are timely. In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 109; see also Porter v. California Dep't. of Corrections, 419 F.3d 885, 891-92 (9th Cir. 2005) (following Morgan). Plaintiff alleges a series of discrete acts: being told she was requesting too many work orders; being told she was bringing down the morale of the department; not being transferred to a building with her co-workers, and so forth.

16

Plaintiff's claim that they are "related" to the timely challenged January 2005 performance evaluation claim is immaterial. Morgan, 536 U.S. at 109.

The Supreme Court also recognized, however, that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." 526 U.S. at 115. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts." Id. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

Here, the one timely challenged act is the January 2005 performance evaluation. The question, then, is whether plaintiff has presented evidence sufficient to show that this "act" is part of an actionable hostile work environment. She has not.

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks, 229 F.3d at 923. "The working environment must both subjectively and objectively be perceived as abusive." Id. (internal quotation marks and citation omitted). Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics and hostility must be measured based on the totality of the circumstances. Id. "These [circumstances] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

As the Court explained above, plaintiff has not produced any evidence that suggests the January 2005 performance evaluation was discriminatory and she has not rebutted defendant's non-discriminatory explanation for her review. Thus, the performance evaluation cannot be the act that makes plaintiff's hostile work environment claim timely. Defendant is entitled to judgment on this claim, too.

### C. *New Claims*

Plaintiff's complaint also includes new claims that were never raised in any administrative complaint: (1) plaintiff overheard Feickert explain that a sick employee had "white spots on his dick;" (2) employees urinated in the fields in front of her; (3) Blean requested that she hold his dick while he urinated; (4) males in the shop hung a picture of a female on the bulletin board, and so on. She contends these claims are exhausted based on her conclusory declaration statement that as to each claim defendant claims she did not exhaust she "complained the same day or the following day to my supervisor, my manager, and always to the EEO officer." Kraus Decl. ¶ 46.

As the Court explained above, however, plaintiff does not cite any case that holds that such complaints satisfy the requirement that she initiate contact with an EEO counselor. Moreover, all of these "new" incidents occurred before one or the other of plaintiff's administrative complaints. The documents produced by defendant demonstrate that plaintiff had ample opportunity to identify any additional claims she wished to make and yet she never notified defendant that its list of her claims was incomplete. Defendant is entitled to judgment on these new, unexhausted claims.

### D. *Disability Claim*

Defendant moves for summary judgment of plaintiff's disability claim on the ground that she does not have evidence sufficient to establish that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." It also argues that plaintiff has failed to identify how her alleged disabilities, and, presumably, defendant's failure to accommodate them, impacted the performance of her job. Finally, defendant notes that to the extent plaintiff claims disparate treatment based on disability, there is no evidence that any of the acts of which plaintiff complains were motivated by plaintiff's alleged disabilities.

Plaintiff merely responds that she has been exposed to lead and that her supervisor, Blean, acknowledged that she suffers from dyslexia. She also states, without support, that she has a psychiatric disability and back problems. Opp. at 26-27. Finally, she claims she

needs time for discovery, although she does not explain how discovery of defendant will assist her in demonstrating that she suffers from a disability within the meaning of the ADA or enable her to explain how her alleged disabilities impacted her ability to do her job. Such information, if it exists, is in plaintiff's possession. It is apparent that plaintiff has no basis for making this claim; it is simply one of a plethora of claims made in her complaint.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on all of plaintiff's claims is GRANTED.

**IT IS SO ORDERED.**

Dated: October 26, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE