1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    VICKEY KRAUS,                              No. C 06-4667 CRB

12              Plaintiff,                        **ORDER GRANTING DEFENDANT'S
                                                  MOTION FOR SUMMARY**
13        v.                                      **JUDGMENT**

14    PRESIDIO TRUST FACILITIES
      DIVISION/RESIDENTIAL
15    MANAGEMENT BRANCH,

16              Defendant.
                                          /
17

18        Plaintiff is an African-American female, and claims that her supervisors discriminated

19    against her on the basis of race, gender, and disability. She also claims that her coworkers

20    and supervisors created a hostile work environment by making discriminatory or retaliatory

21    comments and management decisions. Defendant originally moved for summary judgment

22    on the ground that Plaintiff's two administrative complaints were untimely and/or were

23    unexhausted.

24        This Court granted the motion for summary judgment as to the first administrative

25    complaint on the grounds that Plaintiff failed to meet her burden in demonstrating a prima

26    facie case of discrimination or retaliation. The Ninth Circuit affirmed that holding as to

27    those claims. As to the second administrative complaint, this Court held that Plaintiff failed

28    to exhaust her administrative remedies by failing to complain to the correct person at the

1   Equal Employment Opportunity Commission (EEOC) and by failing to evince an intent to

2   pursue the complaints as required by EEOC regulations. 29 C.F.R. § 1614.105. The Ninth

3   Circuit reversed and remanded that holding on the ground that EEOC regulations provided

4   that the requirement is satisfied if a plaintiff complains to anyone logically connected with

5   the Equal Employment Opportunity (EEO) process. Kraus v. Presidio Trust, 572 F.3d 1039,

6   1044 (9th Cir. 2009) (citing EEOC Management Directive 110, at ch. 2, § I.A. n.1, 1999 WL

7   33318588 (Nov. 9, 1999)). Defendant now moves for summary judgment on the grounds

8   that the remaining claims are still unexhausted because Plaintiff failed to demonstrate an

9   intention to begin the EEO process, and, alternatively, that Plaintiff's claims do not make out

10  a prima facie case of discrimination or retaliation.

11          For the reasons that follow, Defendant's motion is GRANTED.

12                                  **BACKGROUND**

13          Plaintiff Vicky Kraus, an employee with Defendant Presidio Trust Facilities, brought

14  this lawsuit in 2006 based on two administrative charges filed with the EEOC. She asserts

15  claims of employment discrimination on the basis of race, gender, sexual orientation, and

16  hostile work environment. She also claims that several of the instances of discrimination

17  were in retaliation for making complaints to the EEO. The claims stemming from the first

18  complaint to the EEOC were adjudicated in the first motion for summary judgment and

19  affirmed by the Ninth Circuit. Kraus, 572 F.3d 1039.

20          As to the claims stemming from the second administrative complaint, this Court

21  granted summary judgment on the grounds that the claims were unexhausted, concluding that

22  Kraus had not spoken to the correct person at the EEOC. The Ninth Circuit reversed and

23  remanded on the grounds that the person was in fact appropriate under EEOC guidelines,

24  leaving open the question of whether or not Vicky Kraus demonstrated an intention to begin

25  the EEO process. Id.

26          Plaintiff Vicky Kraus alleges that her remaining claims constitute discrimination,

27  retaliation, and, taken as a whole, reflect a hostile work environment. Pl. Opp. at 6, 7. She

28  also alleges that she "complained to the EEO (Deborah Zipp) about these events within a day

                                          2

1  of their occurrence." <u>Id</u>. at 7.  As to the requirement that such complaints be accompanied by

2  an intention to begin the EEO process, Plaintiff states that she "exhibited an intent to initiate

3  the EEO process within 45 days of the alleged discriminatory events for every listed claim."

4  Kraus Decl. ¶¶ 2, 3.  Deborah Zipp denies this account of their conversations, stating instead

5  that Plaintiff "did not exhibit to me any intent to initiate the EEO process within 45 days of

6  the alleged discriminatory event for any of the claims listed below."  Zipp Decl. ¶ 5.

7      Defendant moves for summary judgment on the basis that Plaintiff's claims are either

8  unexhausted because of Plaintiff's failure to exhibit an intent to initiate the EEO process, or

9  that the claims do not constitute discrimination, retaliation, or, taken as a whole, a hostile

10  workplace.  Def. Mot. at 1-2.

11                                **DISCUSSION**

12  **I.      Legal Standard**

13      A principal purpose of the summary judgment procedure is to isolate and dispose of

14  factually unsupported claims.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  A

15  party moving for summary judgment that does not have the ultimate burden of persuasion at

16  trial (usually the defendant) has the initial burden of producing evidence negating an

17  essential element of the non-moving party's claims *or* showing that the non-moving party

18  does not have enough evidence of an essential element to carry its ultimate burden of

19  persuasion at trial.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th

20  Cir. 2000).

21      If the moving party does not satisfy its initial burden, the non-moving party has no

22  obligation to produce anything and summary judgment must be denied.  If, on the other hand,

23  the moving party has satisfied its initial burden of production, then the non-moving party

24  may not rest upon mere allegations or denials of the adverse party's evidence, but instead

25  must produce admissible evidence that shows there is a genuine issue of material fact for

26  trial.  <u>Nissan Fire & Marine Ins. Co.</u>, 210 F.3d at 1102.  A genuine issue of fact is one that

27  could reasonably be resolved in favor of either party.  A dispute is "material" only if it could

28

1  affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477

2  U.S. 242, 248-49 (1986).

3       In determining whether to grant or deny summary judgment, it is not a court's task "to

4  scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275,

5  1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is entitled to rely on the

6  nonmoving party to identify with reasonable particularity the evidence that precludes

7  summary judgment.  See id.

8       **A.    Discrimination and Retaliation**

9       In order to prevail in a Title VII disparate treatment case, a plaintiff must first

10  establish a prima facie case of discrimination.  In particular, a plaintiff must show that (1) she

11  belongs to a protected class, (2) she was qualified for the position, (3) she was subjected to

12  an adverse employment action, and (4) she was similarly situated to individuals outside the

13  protected class who were treated more favorably.  See Aragon v. Republic Silver State

14  Disposal Co., 292 F.3d 654, 658 (9th Cir. 2002).  If a plaintiff succeeds in establishing a

15  prima facie case, the burden of production shifts to the defendant to articulate a legitimate,

16  nondiscriminatory reason for the adverse employment action.  If the defendant does so, the

17  plaintiff must demonstrate that the defendant's articulated reason is a pretext for unlawful

18  discrimination "by either directly persuading the court that a discriminatory reason more

19  likely motivated the employer or indirectly by showing that the employer's proffered

20  explanation is unworthy of credence."  Id. (internal quotation marks and citations omitted).

21       A plaintiff can establish a prima facie case of retaliation by showing that: (1) she

22  engaged in a protected activity; (2) she suffered an adverse employment decision; and (3)

23  there was a causal link between the protected activity and the adverse employment decision.

24  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002).  To establish

25  causation, the plaintiff must show by a preponderance of the evidence that engaging in the

26  protected activity was one of the reasons for the adverse employment decision and that but

27  for such activity the decision would not have been made.  See id.

28

4

The same burden-shifting analysis applicable to discrimination claims is applicable to retaliation claims. If a defendant carries its burden, a plaintiff must demonstrate that the "'assigned reason' was 'a pretext or discriminatory in its application.'" Lynn v. Regents of the Univ. of California, 656 F.2d 1337, 1341 (9th Cir. 1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Pretext may be shown either (1) directly showing that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence. Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1220 ( 9th Cir. 1998). To establish pretext, "very little" direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." Id. at 1222; Little v. Windermere Relocation, Inc., 265 F.3d 903, 915 (9th Cir. 2001).

The burden shifting analysis of McDonnel Douglas permits summary adjudication where a Plaintiff fails to present evidence that an employer's allegedly nondiscriminatory justification was pretextual. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (stating that, on a motion for summary judgment, once a defendant offers a legitimate, nondiscriminatory reason for the allegedly discriminatory act, the presumption of discrimination disappears, and the plaintiff must offer evidence that the reason is a pretext for discrimination).

**II.** **Plaintiff cannot demonstrate a prima facie case of either discrimination or retaliation, and even if she could, defendant articulates non-discriminatory, non-retaliatory, and legitimate reasons for its actions.**

Defendant correctly argues that each of Plaintiffs claims fails to establish a prima facie case of discrimination or retaliation. As to discrimination, Defendant points out that Plaintiff cannot demonstrate that she was performing her job satisfactorily. Def. Mot. at 8:3-5. As to retaliation, she cannot demonstrate a causal link between prior EEO activity and Defendant's alleged activity. Moreover, even if Plaintiff were to establish a prima facie case, Defendant more than meets its burden in demonstrating legitimate reasons for its actions.

**A.** **Claim (3): Feickert's alleged racist comments to James Beeson.**

5

Plaintiff alleges that Mark Feickert made racist remarks to an African-American friend of Plaintiff, James Beeson, to the effect that "Mexicans make better laborers" during a job interview in 2002. Beeson Decl. ¶ 3. Plaintiff was not present at this interview. Feickert Decl. ¶ 5. This does not constitute an adverse employment action. See Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal citations omitted)). Moreover, Plaintiff was not in the room. Mr. Feickert did not direct the statement to her. It did not change any term of her employment, and would not deter her from complaining about Title VII violations. See Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1189 (9th Cir. 2005) ("only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation").

**B.      Claim (5): Zipp's allegedly false accusation of sexual harassment.**

Plaintiff alleges that Deborah Zipp, the EEO officer to whom she complained, falsely accused her of sexually harassing coworker Rosa Medina. Defendant correctly points out that this claim is identical to one contained in her first complaint to the EEOC. Def. Mot. at 10. The Ninth Circuit affirmed this Court's grant of summary judgment as to that claim, holding that it did not establish a prima facie case of discrimination. Kraus, 2009 WL 2190491 at *5. Therefore, summary judgment should be granted in favor of Defendant on this claim.

**C.      Claim (7): In April 2003, Rosa Medina, Kraus' co-worker, made unspecified "rude, misleading, and insensitive comments" to her.**

Plaintiff alleges that Rosa Medina made unspecified "rude, misleading, and insensitive comments" to her, but offers no facts sufficient to raise a genuine issue of material fact in support of her allegation. Plaintiff's opposition states only that her comments contributed to a hostile work environment, and that they formed a part of an ongoing practice of discrimination. Pl. Opp. at 17. Defendant correctly points out that "Title VII is not a general civility code." Def. Mot. at 10 (citing Faragher v. City of Boca Raton, 524 U.S. 775,

United States District Court
For the Northern District of California

788 (1998)). Without detailing any of the comments made, it is impossible to conclude that the comments rose to the level of harassment. See id. Summary judgment is appropriate as to this issue because Plaintiff has not demonstrated a prima facie case of discrimination as to Rosa Medina's comments.

### D.    Claim (8): Tom Blean's allegedly discriminatory movement of maintenance inspectors' offices.

Plaintiff claims that when maintenance supervisor Tom Blean moved the maintenance inspectors to a new building, he left her behind for discriminatory or retaliatory reasons. Kraus Decl. ¶¶ 8, 10. Setting aside whether or not this constituted an adverse employment action (there is no evidence in the record concerning how far the walk was and why it made her job harder), Defendant more than meets its burden in showing a nondiscriminatory, nonretaliatory, and legitimate reason for the difference in moving times.

The maintenance inspectors were moved as new offices became available. Blean Decl. ¶ 4. Kraus does not dispute that she was not at work on the day of the move. Kraus Decl. ¶ 8. On that day, and in the time that followed, only two offices had been constructed, with one still under construction. Blean Decl. ¶ 4. Between two and four weeks later, the crews completed construction of the third office, and Blean moved Kraus to the new building. Id. No matter what, one of the inspectors would have to be left behind during the transition. Plaintiff offers no facts sufficient to reach a finding that Blean's offered reason is pretextual. She merely concludes in her moving papers that Blean's actions were discriminatory, retaliatory, and pretextual. Pl. Opp. at 18. Therefore, summary judgment should be granted to Defendant as to this claim.

### E.    Claim (9): Blean's refusal to allow Plaintiff to act as supervisor in his absence.

Plaintiff alleges that in February 2004, Tom Blean refused to allow Plaintiff to act as maintenance supervisor in his absence, even though he had previously stated that the maintenance inspectors would take turns filling his position. Kraus Decl. ¶¶ 11-13. Defendant correctly argues that this is not an adverse employment action because being

acting supervisor did not involve any change in the terms or conditions of employment, such as increased pay. Def. Mot. at 12. Even if it were considered as such, Defendant meets its burden of demonstrating a legitimate reason for the move. Tom Blean states that when he gave Plaintiff a chance to run the crew in his absence, she demonstrated little production in the field and performed unsatisfactorily. Blean Decl. ¶ 6. Plaintiff does not dispute the crux of Blean's statement – that her work was unsatisfactory. Kraus Decl. ¶ 12. She argues that there was a high volume of work on that day, and because of that her work suffered. Id. This is entirely immaterial to whether or not Blean had a legitimate reason to not offer her the position of temporary supervisor (a position that comes with no pay raise or change in title on paper). Blean Decl. ¶¶ 5,6. Whether or not Kraus can explain away her inadequate performance does not bear on whether Blean had a legitimate reason to believe she should not act as temporary supervisor in his absence. Either way, there is no evidence of a discriminatory motive.

Furthermore, in assigning Alfonso (another maintenance inspector) to the position, Mr. Blean noted that "he had been acting supervisor before, had done a good job, and was the senior member of the crew." Blean Decl. ¶ 6. Plaintiff does not offer facts to establish that Mr. Blean's stated reasons for assigning Alfonso to the position were pretextual. Therefore, summary judgment should be granted to Defendants as to this claim.

### F. Claim (10): Blean's criticism of Kraus for submitting too many work orders.

Plaintiff alleges that Tom Blean's criticism of her for filing too many work orders for insignificant amounts of work were made with a discriminatory or retaliatory motive. Kraus Decl. ¶ 14. Defendants correctly point out that Plaintiff merely alleges criticism of her work performance by her supervisor. Def. Mot. at 13. Plaintiff argues that the criticism was unjustified because she had a heavier workload and less equipment than her coworkers. Pl. Opp. at 20. However, even if the criticism was unjustified, it would not rise to the level of adverse employment action. See Brooks v. City of San Mateo, 229 F.3d 917, 928-29 (9th

1  Cir. 2000) (stating that badmouthing an employee outside the job reference context does not

2  constitute adverse employment action).

3      Even if the criticism constituted an adverse employment action, Defendant articulates

4  legitimate reasons for the criticism.  Tom Blean told his inspectors several times to not file

5  work orders for small amounts of trash that they found during their inspections, but rather

6  that they should just throw the trash away in an adjacent dumpster if it wasn't too heavy.

7  Blean Decl. ¶ 7. While Kraus' coworkers complied, she did not, and Tom Blean received

8  complaints from the ground crew about Kraus' voluminous yet insignificant work orders.  Id.

9  Plaintiff admits "there might have been a few complaints" in connection with her disobeying

10 of this request, and she does not dispute that she did in fact disobey the request.  Compl. ¶ 26.

11 Plaintiff does not offer any facts to support a jury's conclusion that this reasoning is more

12 likely pretextual than legitimate, and therefore summary judgment should be granted for

13 Defendant as to this claim.

14      **G.    Claim (11): Blean's criticism of Plaintiff's effect on department morale.**

15      Plaintiff alleges that, during a mid-year review, Tom Blean criticized Plaintiff for

16 bringing down the department's morale.  Pl. Opp. at 20.  For the reasons articulated above,

17 this claim consists of mere criticism that does not rise to the level of adverse employment

18 action.  See Brooks, 229 F.3d at 928-29.  Even if this were so considered, Defendant meets

19 its burden of demonstrating a legitimate reason for the criticism.  According to Tom Blean,

20 Vicky Kraus had been complaining about the Presidio Trust to anyone that would listen.

21 Blean Decl. ¶ 8.  He states that she would also complain openly about coworkers' job

22 performance, and relates an example of how poorly she handles problems with the

23 construction crew.  Id.  Plaintiff offers no facts to overcome her burden of demonstrating that

24 Mr. Blean's reasons for criticizing her effect on morale were pretextual.  She states only that

25 they are "untrue."  Kraus Decl. ¶ 15.  Such a statement constitutes "a conclusory, self-serving

26 affidavit, lacking detailed facts and any supporting evidence, [and] is insufficient to create a

27 genuine issue of material fact."  F.T.C. v. Publishing Clearing House, Inc., 104 F.3d at 1171.

28

9

1   Regardless of whether Blean was mistaken, there is no evidence of discriminatory

2   motivation, and summary judgment should be granted to Defendant as to this claim.

3   **H.    Claim (12): The August 2004 and January 2005 performance appraisals.**

4       Plaintiff alleges that in August 2004 and January 2005, Tom Blean and manager Steve

5   Bueno failed to appraise Kraus' performance as required by the department's policy.  Pl.

6   Opp. at 21.  In an unpublished opinion, the Ninth Circuit upheld this Court's grant of

7   summary judgment as to the January 2005 performance review on the grounds that there was

8   no triable issue of fact as to whether Kraus' poor rating in her 2004 performance appraisal

9   was discriminatory or retaliatory.  <u>Kraus</u>, 2009 WL 2190491 at *6.  The Ninth Circuit further

10  pointed out that Defendant offered a nondiscriminatory reason for Kraus' poor rating, and

11  that Plaintiff offered insufficient evidence to raise a triable issue of fact as to whether the

12  proffered reasons were a pretext for discrimination or retaliation.  <u>Id.</u>  That reasoning is

13  equally applicable to the August 2004 appraisal.  The August 2004 meeting was meant to be

14  a pre-appraisal, informal meeting designed to alert employees to any problems so that they

15  might improve before the year-end formal appraisal (in this case the January 2005 appraisal).

16  Blean Decl. ¶ 9.

17      Regardless, whether or not Blean's evaluation of Kraus constituted an adverse

18  employment action is not dispositive.  Blean more than overcomes his burden of

19  demonstrating legitimate reasons for his comments and evaluation of Plaintiff.  Blean states

20  that he talked to her about "not completing her paperwork on time, financial miscalculations

21  she was making, and mislabeling various items.  I had been constantly double-checking her

22  work because she was making so many errors . . . ."  Blean Decl. ¶ 10.  Kraus' responds that

23  Blean did not perform the evaluation correctly.  Kraus Decl. (Doc. 25) ¶ 42.  Plaintiff states

24  in her opposition that Blean conducted the evaluation in violation of department policy (such

25  as a requirement that only "objective" elements be considered).  Pl. Opp. at 21.  However,

26  there is no evidence that such a policy exists.  Blean Decl. ¶ 9.  Plaintiff has failed to

27  demonstrate that Mr. Blean's reasons behind his informal evaluation of her performance

28

1    were pretextual, and therefore summary judgment should be granted for Defendant as to this

2    claim.

3    **I.      Claim (14): Feickert's allegedly false accusation that Kraus sexually**

4    **harassed a coworker.**

5        Plaintiff alleges that Feickert made false allegations of sexual harassment to Deborah

6    Zipp, thereby constituting an adverse employment action that was both discriminatory and

7    retaliatory. Pl. Opp. at 16. In support of her position Plaintiff submits a letter signed by the

8    alleged victim of the harassment stating that Kraus never sexually harassed her (Rosa

9    Medina). Kraus Decl. Ex. 2. However, Mr. Feickert states that he saw Kraus caress

10   Medina's hand with a stuffed animal while Medina had a look of discomfort, that Medina

11   told him that Kraus would often say she wanted to "give Medina a hickey," and that Medina

12   had a look of discomfort when he saw Kraus pull Medina's face into her breasts during a

13   hug. Feickert Decl. ¶ 6. He further states that he filed the report with part-time EEO/HR

14   officer Nancy Fisher after she told him it was his duty as a supervisor to report such activity

15   even if the alleged victim did not. Id. The letter from Rosa Medina included in Vicky

16   Kraus' declaration does not contest whether these events occurred; she only states that Kraus

17   did not sexually harass her.

18       Defendant correctly points out that the law requires supervisors to take corrective

19   action when they are made aware of potential sexual harassment in the workplace. See

20   Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001) ("If the employer fails to take

21   corrective action after learning of an employee's sexually harassing conduct, or takes

22   inadequate action that emboldens the harasser to continue his misconduct, the employer can

23   be deemed to have adopt[ed] the offending conduct and its results, quite as if they had been

24   authorized affirmatively as the employer's policy." (citations and internal quotations

25   omitted)). Defendant therefore states a nondiscriminatory, nonretaliatory reason for his

26   reporting of Kraus' behavior toward Medina, regardless of whether Medina actually felt

27   harassed. Plaintiff responds by saying that Feickert made the allegations in retaliation for her

28   filing of a complaint with the EEO, but the only evidence she offers is the letter from Rosa

Medina. Kraus Decl. ¶ 6. Plaintiff has no evidence that Defendant's reasons for its actions were pretextual, and therefore summary judgment should be granted for Defendant as to this claim.

### III.    Hostile Work Environment

Plaintiff also claims that, taken together, the above claims created a hostile working environment. "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks, 229 F.3d at 923. "The working environment must both subjectively and objectively be perceived as abusive." Id. (internal quotation marks and citation omitted). Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics and hostility must be measured based on the totality of the circumstances. Id. "These [circumstances] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The Court uses a sliding scale on which "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Brooks, 229 F.3d at 926 (citations omitted).

As explained above, plaintiff's evidence fails to establish a prima facie case of discrimination. While the Court assumes that Plaintiff subjectively believed the workplace to be hostile and abusive, Plaintiff fails to satisfy the objective prong of the test embraced in Brooks. Even when she can demonstrate an adverse employment action, defendant more than meets its burden in demonstrating a legitimate, nondiscriminatory, nonretaliatory reason for its actions, and she has not rebutted defendant's nondiscriminatory explanation for her claims.

The standard for proving a hostile working environment is quite high. The Ninth Circuit in Kortan v. California Youth Authority, 217 F.2d 1104, 1107 (9th Cir. 2000), did not find a hostile work environment to exist where a supervisor called female employees

"castrating bitches," "Madonnas," or "Regina" on several occasions in front of plaintiff. <u>Id.</u> The Court said the behavior was offensive, but it did not find it pervasive or severe enough to unreasonably interfere with the plaintiff's employment. <u>Id.</u> at 1111. <u>See also</u> <u>Vasquez v. County of Los Angeles</u>, 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others). <u>Compare</u> <u>Kang v. U. Lim America, Inc.</u> 296 F.3d 810, 817 (finding that a Korean plaintiff suffered national origin harassment where the employer verbally and physically abused the plaintiff because of his race); <u>Nichols v. Azteca Rest. Enters.</u>, 256 F.3d 864, 872-73 (9th Cir.2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day).

Plaintiff fails to allege conduct which a reasonable worker in her position would consider sufficiently severe and pervasive as to alter the conditions of employment and create an abusive work environment. <u>See</u> <u>Ellison v. Brady</u>, 924 F.2d 872, 879 (9th Cir. 1991). The acts alleged occurred over the course of three years. These acts involved legitimate criticism of Plaintiff's work product or communication skills, unspecified comments made by a coworker to Plaintiff, a delay in having Plaintiff's office moved, and a decision to not allow her to act as temporary supervisor in Tom Blean's absence. Plaintiff's more severe allegations, that supervisor Mark Feickert made racist remarks to an interviewee outside the presence of Plaintiff, and that both Feickert and Zipp falsely accused her of sexual harassment, also fail for both a lack of severity and frequency. Feickert's comment is certainly offensive, but it does not rise to the level of creating a hostile working environment. The same reasoning applies to her claim that Feickert and Zipp falsely accused her of sexual harassment. Feickert merely reported what he saw. No one was present when Zipp informed Plaintiff that she had been reported for sexual harassment. Kraus Decl. (Docket #25) ¶¶ 20-21. These claims, taken together, do not rise to the level of severe and pervasive abuse so as

to materially affect the conditions of Plaintiff's employment, and summary judgment should be granted to Defendant as to this claim.

## IV.     Intent to initiate the EEO process

Plaintiff claims that she "exhibited an intent to initiate the EEO process within 45 days of the alleged discriminatory events for every listed claim." Kraus Decl. ¶ 2. Deborah Zipp, the EEO Officer to whom she complained, states that "she did not exhibit to me any intent to initiate the EEO process within 45 days of the alleged discriminatory event for any of the claims listed below." Zipp Decl. ¶ 5. Since none of the foregoing claims constitute discrimination or retaliation, consideration of this issue is mooted by their resolution in favor of Defendant.

## CONCLUSION

Accordingly, Defendant's motion for summary judgment is GRANTED in its entirety. **IT IS SO ORDERED.**

Dated: March 29, 2010

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE